1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

8  UNITED STATES OF AMERICA,

9          Plaintiff,                        NO. 2:15-CR-00045-JLQ

10         v.                                ORDER RE: MOTION TO DISMISS

11  CHRISTOPHER MYERS,

12         Defendant.

13         BEFORE THE COURT is Defendant's Motion to Dismiss (ECF No. 20). The

14  Government filed a Response (ECF No. 21) and Defendant filed a Reply (ECF No. 24).

15  Oral argument was heard on December 7, 2016. Defendant was not present, represented

16  by Colin Prince of the Federal Defenders of Eastern Washington and Idaho. The

17  Government was represented by Assistant United States Attorney Stephanie Van Marter.

18  At oral argument, the court directed the parties to submit supplemental briefs. The parties

19  did so. *See* (ECF No. 30); (ECF No. 31). Defendant also submitted a *pro se ex parte* letter

20  with his objections to the court's Order (ECF No. 27) directing the filing of supplemental

21  briefs. *See* (ECF No. 29). This Order memorializes the court's ruling on the Motion.

22                     **I.    Introduction/Summary of the Case**

23  **A.    State Court Proceedings**

24         On January 30, 2015, Spokane County Sheriff's Office Deputies conducted a traffic

25  stop of a car carrying three individuals. (ECF No. 20-1 at 29). The driver was taken into

26  custody due to a pending warrant. (ECF No. 20-1 at 29). While law enforcement officers

were "dealing" with the Defendant, Christopher Myers, Defendant "got out of the vehicle" and "suddenly took off running in a southerly direction across the parking lot." (ECF No. 20-1 at 29). The Defendant fell to the ground and while law enforcement were trying to take him into custody, "there was a struggle" and law enforcement heard a gunshot. (ECF No. 20-1 at 29). Defendant was arrested the same day and went to the hospital. (ECF No. 20-1 at 12).

On February 3, 2015, the Spokane County District Court entered a commitment Order noting Defendant was in the hospital. (ECF No. 20-1 at 12). Defendant's first appearance in state court was scheduled for February 4, 2015, but was continued to February 9, 2015. (ECF No. 20-1 at 12).

The Information in state court was filed on February 17, 2015. (ECF No. 20-1 at 12). Defendant was arraigned on February 24, 2015, on two counts of First Degree Assault with a firearm enhancement on each count and one count of First Degree Unlawful Possession of a Firearm. (ECF No. 20-1 at 12).

On April 3, 2015, the trial date was continued. (ECF No. 20-1 at 13).

On May 1, 2015, the state dismissed the Unlawful Possession of a Firearm charge "because the federal authorities decided to prosecute that charge in Federal Court." (ECF No. 20-1 at 13).

The trial date was continued on July 16, 2015, September 25, 2015, and October 5, 2015. (ECF No. 20-1 at 13-14). Defendant objected to the July 16, 2015 continuance but it was granted over his objection. (ECF No. 20-1 at 9). According to Defendant's state attorney, "[t]he purpose of the October 5, 2015 continuance was because a plea had been set to resolve the case but then decisions by the Federal authorities created problems with going forth with the plea at that time." (ECF No. 20-1 at 14).

On November 20, 2015, Defendant moved the Spokane County Superior Court for new counsel because his attorney "has [not] spent sufficient time with him to be prepared

ORDER - 2

for trial in the manner that would be necessary." (ECF No. 20-1 at 14). Defendant did not object to a continuance to allow new counsel to become familiar with the case. (ECF No. 20-1 at 14). On December 3, 2015, the state court granted the motion, assigned new counsel, and continued the trial date. (ECF No. 20-1 at 16).

On January 29, 2016, Defendant's trial date was continued again over Defendant's objection. (ECF No. 20-1 at 18). The court found good cause to continue based on "[c]ontinued investigation/negotiating." (ECF No. 20-1 at 18).

On September 2, 2016, the trial date was continued over Defendant's objection. (ECF No. 20-1 at 20). The continuance was granted because "defense counsel needs more time to get ready." (ECF No. 20-1 at 20).

The above continuances are detailed in this court's file. A review of the state court's online docket shows the trial date has been continued a total of 12 times and is currently set for January 23, 2017. The docket also reflects Defendant is being held on a $750,000 bond.

Defendant's state attorney stated in a declaration based on his offender score and enhancement, Defendant is facing a total of 393 to 501 months incarceration if convicted of the two assault charges and enhancements. (ECF No. 20-1 at 13).

## B.    Federal Court Proceedings

On May 5, 2015, an Indictment was returned charging Defendant with one count of Felon in Possession of a Firearm and Ammunition. (ECF No. 1). Upon the filing of the Indictment, a warrant was issued by this court on May 5, 2015 for Defendant's arrest (ECF No. 4). No action has been taken by federal authorities on the federal court arrest warrant other than filing a detainer with state authorities. Since his arrest on state charges, Defendant has been and is still housed at the Spokane County Jail, the same place federal detainees are held and located less than a mile from this courthouse. *See* (ECF No. 20 at 16).

On April 14, 2016, the court received a letter from Defendant stating he was in custody at the Spokane County jail on the related state charges and learned he was also being held on a federal detainer since May 5, 2015, but had "not been properly served/notified." (ECF No. 5 at 1). In the letter, Defendant asserted his "speedy trial rights under the Interstate Agreement on Detainers Act pursuant to the 6th Amendment have been violated." (ECF No. 5 at 1). Defendant requested his "right to due process immidiately [sic]." (ECF No. 5 at 1). After Defendant's letter was filed, the United States Attorney's Office informed the court of its intent to wait until the state charges resolved before proceeding on the instant federal charge.

On May 4, 2016, the court issued an Order re: Interstate Agreement on Detainers Act in response to Defendant's letter. (ECF No. 7). In the Order, the court directed the Government to bring Defendant to trial within 180 days based on his assertion of rights pursuant to the Interstate Agreement on Detainers Act. (ECF No. 7). The court also stated "[t]he Government's position of waiting until the state charges resolve is unacceptable and in violation of statutory law." (ECF No. 7 at 2).

The same day, the court received another letter from Defendant again purporting to invoke his "rights to speedy trial/final disposition under the provisions of the Interstate Agreement on Detainers Act, persuant [sic] to the 6th Amendment of the U.S. Constitution." (ECF No. 8 at 1). Defendant alleged he had still not been properly served with the detainer and alleged his due process rights were being violated. (ECF No. 8 at 1). He requested final disposition on this matter or initiation of the speedy trial clock. (ECF No. 8 at 1).

On May 19, 2016, Defendant was appointed the Federal Defenders as counsel in this matter. (ECF No. 9). On May 20, 2016, the court received another letter from Defendant. (ECF No. 11). Defendant acknowledged the federal Indictment charged him with "a violation of 18 U.S.C. § 922(g)(i)" and came from "'the weapon' allegedly used,

in the alleged assault case that the state has been holding me on." (ECF No. 11 at 1). He also alleged he had not been properly notified of the detainer and "was not provided a copy of the Indictment/detainer/charging information." (ECF No. 11 at 1). He stated he "believe[d] that, somehow, this is a violation of my due process rights, and a violation of the provisions of the Interstate Agreement on Detainers Act." (ECF No. 11 at 2). Defendant stated the state firearm charge was dismissed and "forwarded to the U.S. Government on a 'silver platter.'" (ECF No. 11 at 2). He alleged he had been prejudiced "because of the length of the delay, 365 days plus." (ECF No. 11 at 2). Defendant stated he believed the Government's delay in prosecuting the federal charge would "further prejudice[]" him "because if there is a finding of guilt on the state charges, the U.S. Government can seek a substantially greater punishment on the instant matter." (ECF No. 11 at 2-3). He ended his letter "requesting an explanation from the court, as to why these blatant due process rights violations have been allowed to occur." (ECF No. 11 at 3-4).

On June 9, 2016, Defendant submitted another letter. (ECF No. 13). In this letter, Defendant acknowledged the court's Order and again referred to the fact he had not been "officially" or "properly notified or served" with the federal detainer. (ECF No. 13 at 2). He also alleged the delay had prejudiced him "by causing undue delay in proceedings." (ECF No. 13 at 3). Defendant argued the state prosecutor was using the federal Indictment "as a tool in furtherance of the states [sic] case and prosecution, to attempt, to reach a plea of guilt through bargaining." (ECF No. 13 at 3). Defendant argued the court should shorten the time to bring him to trial from 180 days to 120 days. *See* (ECF No. 13 at 1-2, 3-4).   On June 20, 2016, the court issued an Order re: Pro Se Filings (ECF No. 15) directing Defendant to only file documents through counsel.

On October 6, 2016, the Government filed a Motion for Reconsideration (ECF No. 17) requesting the court to reconsider the Order ruling the Interstate Agreement on Detainers Act applied to Defendant, who is a state pretrial detainee. The court denied

expedited hearing on the Motion for Reconsideration and stated "[t]he court finds reconsideration of its prior Order may be warranted, although Defendant's due process and statutory rights to a prompt and orderly disposition of the charge against him may provide relief outside the IADA." (ECF No. 19 at 3). On November 4, 2016, the court granted the Motion for Reconsideration. (ECF No. 23).

On October 25, 2016, counsel for the Defendant filed the instant 30 page Motion to Dismiss (ECF No. 20). On November 1, 2016, the Government filed a Response. (ECF No. 21). On November 14, 2016, Defendant filed a 19 page Reply. (ECF No. 24).

On December 7, 2016, the court heard oral argument on the Motion to Dismiss. Defendant was represented by Colin Prince of the Federal Defenders of Eastern Washington and Idaho. The Government was represented by Assistant United States Attorney Stephanie Van Marter.

During oral argument, the counsel for the Government stated the Interstate Agreement on Detainers Act applied "because somebody first in time already has him in their sovereign custody; and we agreed a long time ago to stop plucking defendants from different custodies just because different jurisdictions have charges so that there's no continuity of case." (ECF No. 28 at 17). The Government's attorney asserted if Defendant were obtained by *writ of habeas corpus ad prosequendum*, the anti-shuffling provisions of the Interstate Agreement on Detainers Act "becomes at play; and we don't get to give [him] back" and "the state does not get to continue to pursue their matter anyway because they're in our custody." (ECF No. 28 at 17).

Because this argument was contrary to the Government's prior position that the Interstate Agreement on Detainers Act did not apply, the court ordered the parties to submit supplemental briefs addressing the arguments presented at the hearing. *See* (ECF No. 27). On December 15, 2016, Defendant submitted a *pro se ex parte* letter objecting to the Order re: Supplemental Briefs. (ECF No. 29). On December 16, 2016, the Government

1    and Defendant submitted their briefs in accordance with the Order. *See* (ECF No. 30);

2    (ECF No. 31).

3                                    **II.    Discussion**

4         "[T]he right to a speedy trial is as fundamental as any of the rights secured by the

5    Sixth Amendment." *Kloper v. State of N.C.*, 386 U.S. 213, 223 (1967). However, "[t]he

6    right to a speedy trial is generically different from any of the other rights enshrined in the

7    Constitution for the protection of the accused." *Barker v. Wingo*, 407 U.S. 514, 519

8    (1972). These differences include: (1) the "societal interest in providing a speedy trial

9    which exists separate from, and at times in opposition to, the interests of the accused"; (2)

10   "deprivation of the right [to a speedy trial] may work to the accused's advantage"; and (3)

11   "the right to speedy trial is a more vague concept than other procedural rights." (*Id.* at

12   519-21).

13        To determine whether a violation of the speedy trial right occurred, the Supreme

14   Court adopted a balancing test which courts must use "on an ad hoc basis." (*Id.* at 529-30).

15   Because of the nature of the right, the Supreme Court "can do little more than identify

16   some of the factors which courts should assess in determining whether a particular

17   defendant has been deprived of his right." (*Id.* at 530). Those factors are: (1) the length of

18   delay; (2) the reason for delay; (3) defendant's assertion of their speedy trial rights; and

19   (4) prejudice to the defendant. (*Id.*). None of these factors are "either a necessary or

20   sufficient condition to the finding of a deprivation of the right of speedy trial" and must be

21   considered "together with such other circumstances as may be relevant." (*Id.* at 533). The

22   Supreme Court also noted "[t]he amorphous quality of the right also leads to the

23   unsatisfactorily severe remedy of dismissal of the indictment when the right has been

24   deprived. This is indeed a serious consequence because it means that a defendant who may

25   be guilty of a serious crime will go free, without having been tried." (*Id.* at 522).

26

1    Defendant contends all four factors weigh in his favor. The Government has
2    conceded the first and third factors favor Defendant, but argues the delay is justified and
3    Defendant has not suffered prejudice.

4    During oral argument, the Government raised the new argument that the Interstate
5    Agreement on Detainers Act prevented it from bringing Defendant into custody because of
6    the Act's anti-shutling provisions. Because both parties agreed the Act did not apply in
7    their briefs, the court directed the parties to file supplemental briefs addressing this new
8    argument. In violation of this court's Order, Defendant submitted a *pro se* letter objecting
9    to the Order re: Supplemental Briefs. *See* (ECF No. 29). Any objections Defendant might
10   have should be filed by counsel, as Defendant is no longer proceeding *pro se*. *See* (ECF
11   No. 15).

12   In the supplemental brief, counsel for the Defendant re-asserted the Interstate
13   Agreement on Detainers Act does not apply to pretrial detainees. (ECF No. 31). The
14   Government acknowledged the Act does not apply to pretrial detainees, but argued the
15   anti-shuttling provisions "do come into play." (ECF No. 30 at 4). The Government cited a
16   district court order wherein the court stated "obtaining [the defendant] by means of a
17   subsequent writ of habeas corpus ad prosequendum arguably would have activated the
18   anti-shuttling provisions" of the Act. *U.S. v. Ballam*, 932 F. Supp. 1224, 1229-30 (D. Nev.
19   1996), *aff'd* 131 F.3d 148 (9th Cir. 1997) (unpublished). The Government therein claimed
20   had it sought a writ to bring Defendant into federal custody on the outstanding warrant,
21   the anti-shuttling provisions of the Act would have been triggered. The *Ballam* district
22   court did not cite or explain how the anti-shuttling provisions of the Interstate Agreement
23   on Detainers Act might apply by obtaining custody of a state pretrial detainee by writ
24   pursuant to a federal court warrant. Although the Ninth Circuit affirmed the district court
25   decision, it did not mention the district court's suggestion the Act might apply in such a
26   situation,  observing it did not find the argument persuasive. *See Ballam*, 131 F.3d 148. It

is difficult to believe the Act does not apply to pretrial detainees in general, but does when they are obtained by a court-issued writ. There is no authority supporting such an interpretation or explaining how the Act would be triggered in such a situation. Accordingly, the court rejects the Government's argument and finds again the Interstate Agreement on Detainers Act does not apply to Defendant. The court will now proceed to address the four *Barker* factors.

**A.    Length of Delay**

The Ninth Circuit has noted "[a]lthough there is no bright-line rule, courts generally have found that delays approaching one year are presumptively prejudicial." *U.S. v. Gregory*, 322 F.3d 1157, 1161-62 (9th Cir. 2003); *see Doggett v. U.S.*, 505 U.S. 647, 652 n.1 (1992) (same). The delay is measured from "the time of the indictment to the time of trial." *Gregory*, 322 F.3d at 1161-62 (quoting *U.S. v. Sears, Roebuck and Co., Inc.*, 877 F.2d 734, 739 (9th Cir. 1989)). If a defendant shows the delay has been long enough to be "presumptively prejudicial," "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. "[N]o showing of prejudice is required when the delay is great and attributable to the government." *U.S. v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). The Ninth Circuit holds a 22 month delay "is not long enough to excuse [the defendant] from demonstrating actual prejudice to prevail on his claim." *Gregory*, 322 F.3d at 1163.

The federal Indictment in this matter was returned May 5, 2015, and trial has not occurred in over 19 months. Because Defendant has not been brought to federal court there is no scheduling order or trial date pending. The Government has conceded the delay in this matter triggers a full determination of the *Barker* factors, but also noted Defendant did not object to some of the state continuances. (ECF No. 21 at 3-4). Based on the length

of delay being more than one year, the court finds Defendant met his initial burden and a full examination of the *Barker* factors is required.

The delay in this matter does not absolve Defendant from showing actual prejudice. The nearly 18 month delay is not sufficiently long to qualify as a "great" delay. *See Gregory*, 322 F.3d at 1163 (holding 22 month delay "is not long enough to excuse [the defendant] from demonstrating actual prejudice to prevail on his claim"). Additionally, the reason for delay does not rise to the level of intentional bad faith conduct. Defendant's arguments on these issues are addressed below.

**B.    Reason for Delay**

The Government "bears the burden of explaining pretrial delay." *McNeely v. Balans*, 336 F.3d 822, 827 (9th Cir. 2003). In considering the Government's asserted reason for delay, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." (*Id.*). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." (*Id.*). "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (*Id.*).

The Government has asserted the delay in this matter is attributable to Defendant being "in state custody, facing significant state charges." (ECF No. 21 at 5). Additionally, the Government asserts possession of the firearm is "relevant to both prosecutions" even though the state charges involve "separate offenses, with separate elements" and the state firearm charge has been dismissed. (ECF No. 21 at 6).

Defendant argues the fact of concurrent state charges does not provide "*carte blanche* for delaying a federal case." (ECF No. 20 at 21). Defendant relies on cases from other circuits to support this argument. *See U.S. v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010);

*U.S. v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009); *but see*, *U.S. v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995) (holding delay is appropriate to allow the defendant to be prosecuted by the state "without interference by the federal government" because "[t]o do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray"); *U.S. v. Schreane*, 331 F.3d 548, 554-55 (6th Cir. 2003) (holding "[s]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay") (internal quotation marks and citation omitted). Defendant recognizes awaiting completion of prosecution by another sovereign may be a legitimate reason for delay, but argues the concerns underlying the rationale are not present here. *See* (ECF No. 20 at 22-24). Defendant analogizes his case to *Seltzer*.

In *Seltzer*, the Tenth Circuit held the Government "must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue." *Seltzer*, 595 F.3d at 1178. There, the defendant was charged in state court with drug charges and in federal court with counterfeiting and being a felon in possession of a firearm. *See* (*id*. at 1174-75). The federal prosecution was delayed two years while the state proceedings proceeded to completion. (*Id*. at 1177).

In *Seltzer*, the Government asserted the delay occurred because it wanted the state proceedings to complete first before going forward with the federal charges. (*Id*.). The Tenth Circuit acknowledged this may be a proper reason for delay "in some circumstances" but held it was not in *Seltzer* for three reasons: (1) the state and federal charges had "no overlap" and were "entirely distinct"; (2) concurrent proceedings "would not be logistically cumbersome" because the county jail was five blocks from the federal courthouse; and (3) the federal charges were simple which "demonstrates the relatively

light burden that proceeding with the federal prosecution would have imposed upon the government." (*Id*. at 1178-79). Even though there was no evidence the Government "intentionally delayed the case for the explicit purpose of gaining some advantage" the Tenth Circuit held the Government's asserted reason for delay was not sufficient to justify the delay. (*Id*. at 1179).

Some of the reasons articulated in *Seltzer* are comparable to the instant matter. Defendant is being held in the Spokane County Jail, which is very close to the federal courthouse. Transporting Defendant back and forth for federal proceedings would not be unduly burdensome or logistically cumbersome.

Additionally, the one-count Indictment charging Defendant with Felon in Possession of Firearm and Ammunition is simple and does not appear to present any complications for the Government. Law enforcement witnessed the alleged possession and the firearm was recovered from the scene. The Government has not presented evidence showing the case against Defendant is complex.

While the state assault charges are distinct from the federal Felon in Possession charge, the crimes are factually overlapping. The alleged possession occurred as Defendant allegedly discharged a firearm thereby committing assault against two law enforcement officers. As the Government points out, "the possession of the firearm is relevant to both prosecutions." (ECF No. 21 at 6). It is unclear in what ways the possession of the firearm could disrupt parallel prosecutions. However, that there is some factual overlap cannot be ignored.

The Ninth Circuit has not ruled on the issue of delays caused by parallel prosecutions. While the Tenth Circuit requires a heightened showing by the Government, other circuits do not. *See Schreane*, 331 F.3d at 554; *Thomas*, 55 F.3d at 151. While some of the facts of this case share some similarities to *Seltzer*, an important distinction herein is

ORDER - 12

Defendant's significant state charges which carries potentially lengthy sentences, much longer than the possible sentence he faces on the federal charge.

Defendant also argues the delay is unjustified because the state court has "repeatedly continued his case over Myers's [sic] objection." (ECF No. 20 at 24). He argues the reasons for granting continuances were based on defense counsel's workload which "would never pass muster in federal courts." (ECF No. 20 at 24). There is no question the state proceedings have been greatly delayed by 12 continuances. However, Defendant has presented no authority to suggest this court should find a Sixth Amendment violation in these proceedings simply because the state may be unreasonably delaying the state matter. If there is a constitutional violation in the state proceedings, Defendant's state attorney could move for dismissal on Sixth Amendment grounds. *See Barker*, 407 U.S. at 515 ("the right to a speedy trial is fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States") (internal quotation marks and citation omitted).

Lastly, Defendant argues the Government's delay in this matter has been intentional, although not in bad faith. (ECF No. 20 at 25). The Government has been aware of Defendant's assertion of his speedy rights by the letters filed and also the court's Order directing the Government to proceed in this case. While true, there is no evidence the Government did so with the intent to "hamper the defense" or otherwise disadvantage Defendant's ability to prepare a defense in this matter. *See Barker*, 407 U.S. at 531. Without evidence of ill intent, the Government's role in the delay, while intentional, does not warrant being weighed as heavily as a bad faith attempt to undermine Defendant's defense. The Supreme Court's holding in *Barker* does not state any intentional conduct against the Government should be weighed heavily against it, but rather "[a] deliberate attempt to delay the trial ***in order to hamper the defense.***" (*Id.*) (emphasis added).

Defendant is not asserting bad faith by the Government in this matter. *See* (ECF No. 20 at 25).

Under the facts of this case and case law addressed above, the reason for delay does not vindicate the Government, but neither does it weigh strongly against the Government.

**C.    Defendant's Assertion of Rights**

The parties do not dispute the Defendant asserted his right to a speedy trial on multiple occasions. *See* (ECF No. 21 at 6); (ECF No. 20 at 26). "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant has been deprived of the right." *Barker*, 407 U.S. at 531-32. Since Defendant asserted his right multiple times, this factor weighs strongly in favor of Defendant.

**D.    Prejudice**

The Supreme Court has identified three interests the speedy trial right was designed to protect: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Of those three, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (*Id*.). Examples of this type of prejudice include the loss of witnesses or fading memories. (*Id*.). Because the length of delay herein is not so great as to relieve Defendant of showing prejudice, the inquiry is whether he has demonstrated actual prejudice. *See Gregory*, 322 F.3d at 1162-63. Additionally, the delay has not been caused by the Government's intentional bad faith conduct.

Defendant argues he has been prejudiced in three ways: (1) he was denied the assistance of counsel for almost one year; (2) the lack of initial appearance kept Defendant from being able to invoke his statutory rights under the Speedy Trial Act; and (3) he has suffered anxiety and concern as demonstrated by his letters. (ECF No. 20 at 28).

The Government argues Defendant has not suffered actual prejudice due to the delay in the federal prosecution. (ECF No. 21 at 6). The Government asserts Defendant has not shown how the denial of counsel has impaired his ability to defend and prepare his case. (ECF No. 21 at 7). The Government argues "Defendant has not made any showing that witnesses are unavailable, or that the delay has compromised his defense." (ECF No. 21 at 13). The Government does concede Defendant has not been able to invoke his Speedy Trial Act rights, even though he has been able to invoke due process and Sixth Amendment rights. (ECF No. 21 at 8).

Lastly, the Government argues Defendant's letters do not demonstrate anxiety and concern, and if any exists, "it would appear to simply be based on the fact of pretrial detention." (ECF No. 20 at 8-9). The Government noted Defendant's pretrial detention has been in state custody as part of the state charges, and even if the Government brought him to appear by a *writ of habeas corpus ad prosequendum*, he would still be in state custody. (ECF No. 21 at 9-10). Because he is in state custody, the Government argues any oppressive pretrial detention is "not related to the Federal Indictment" and "the resolution of the Federal charges would not serve to resolve anxiety or concern over the pending state charges." (ECF No. 21 at 12).

In his Reply, Defendant argues the deprivation of counsel prejudiced Defendant because "he had no federal lawyer to consult on sentencing guidelines, on the evidence, on the possibility of suppression, or to generally 'minimize [his] anxiety and concern.'" (ECF No. 24 at 13). Defendant also argues the fact he was and is in state custody hurts his ability to obtain a shorter sentence had he been sentenced earlier on his federal case to a concurrent sentence. (ECF No. 24 at 11-13).

While Defendant did not have federal counsel for over a year, the reasons offered by Defendant do not show how defending the federal charge has been impaired. Having counsel would have allowed him to pursue possible motions and resolution *sooner*, but

Defendant does not assert those opportunities are gone or impaired because of the delay. For these reasons, Defendant's first argument fails to establish actual prejudice.

There is no dispute Defendant has been unable to invoke rights under the Speedy Trial Act because he has not appeared on the federal charge. To the extent he cannot invoke those specific rights, he has been prejudiced. However, as the instant Motion demonstrates, he has not been prevented from invoking constitutional rights. The prejudice he might suffer, based on his inability to invoke certain statutory rights, is limited.

The court does not construe Defendant's letters as showing "anxiety and concern." His letters show he is asserting his rights to due process and a speedy trial, but do not suggest mental anguish over the pending charges. If anything, Defendant seems defiant over having the charge pending. His tone and words do not suggest "anxiety and concern" over the federal charges. Frustration or anger might more accurately describe his mental state towards the federal charge. Defendant has presented no other evidence to suggest he is suffering "anxiety and concern" over the federal charge. Additionally, the fact he is facing much more serious state charges renders any possible concern related to the federal charge secondary.

Defendant's argument in the Reply regarding concurrent sentences misses the mark. The Government pointed out Defendant would still be in state custody to show that any concern of "oppressive pretrial detention" is related to the state charges. Defendant is being held on a $750,000 bond on the state assault charges. Even if the federal charges were not pending, he would still be in state custody.

Defendant's argument that he might end up serving a longer time in prison because he is not getting credit for time spent in custody on the federal charge is hypothetical. It does not demonstrate *actual* prejudice because he has not been convicted or sentenced on either state or federal charges. As a pretrial detainee, Defendant's hypothetical claim of

prejudice at this point that does not fit within the recognized categories of prejudice for determining whether a Sixth Amendment violation has taken place.

In summary, the Defendant's arguments do not show actual prejudice to the defense of his federal case, nor do they establish anxiety and concern. This factor does not weigh in favor of Defendant.

### III.    Conclusion

The delay in this matter is no small amount of time. The state proceedings are going at a much slower pace than federal proceedings would. However, dismissing the Indictment with prejudice is an "unsatisfactorily severe remedy." *Barker*, 407 U.S. at 522. Evaluation of the *Barker* factors does not favor Defendant, as he has shown, at most, minimal prejudice. For all of the above reasons, the Motion is Denied.

**IT IS HEREBY ORDERED**:

1.    The Motion to Dismiss (ECF No. 20) is **DENIED**.

2.    The Defendant may renew his Motion to Dismiss at a later time if this matter continues to be delayed.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated December 21, 2016.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 17